IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THOMAS M. MORIGGI,

    Plaintiff,

vs.                                                CASE NO. 1:11-cv-11-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for a period of disability and disability insurance benefits and for Supplemental Security Income benefits. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 14 and 16.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and for Supplemental Security Income benefits under Title XVI of the Act on November 27, 2007 alleging a disability onset date of September 15, 2003. (R. 142-47.) Plaintiff's applications were denied initially and upon reconsideration. (R. 80-85, 89-92.) Plaintiff then filed a timely request for an administrative hearing on October 26, 2008. (R. 94-95.) A video hearing was held before an Administrative Law Judge ("ALJ") on April 6, 2010 and the ALJ issued a

written decision dated April 19, 2010 denying Plaintiff's applications. (R. 8-69.) Plaintiff then appealed this decision to the Appeals Council on May 13, 2010, which denied Plaintiff's request for review on December 22, 2010. (R. 1-3, 7.) Plaintiff then filed his Complaint in this case on January 19, 2011. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### A.  Personal Background

Plaintiff, born on December 6, 1961, was 41 years old as of the date of his administrative hearing. (R. 17.) Plaintiff has past relevant work as an apartment maintenance worker and a plumber. (R. 63.)

### B.  Evidence Considered By the ALJ

The evidence considered by the ALJ consisted primarily of Plaintiff's records from his visits to the Emergency Room at several hospitals in the Gainesville, Florida

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

5

area, his visits to his treating physicians and the reports completed by several consulting physicians and several non-examining state agency physicians.  The Court will focus its discussion of the record on Plaintiff's lower back pain and left arm issues, as those are most relevant to the issues before the Court in this case.

On September 24, 2003, Plaintiff reported to the Emergency Room ("ER") at Shands at AGH Hospital in Gainesville, Florida complaining of pain in his lower back and right elbow.  (R. 317-19.)  He was diagnosed with a muscle strain in his lumbar region and exam showed that his "back pain [wa]s most likely caused by a strain of the muscles or ligaments that support the spine."  (R. 320-24.)

On July 26, 2004 Plaintiff reported back to the ER at Shands at AGH Hospital, again complaining of lower back pain.  (R. 310-16.)  Upon examination, Plaintiff exhibited some lumbrosacral tenderness and exam again showed his "back pain [wa]s most likely caused by a strain of the muscles or ligaments that support the spine."  (R. 311, 314.)  He was diagnosed with a herniated disc and back pain, was prescribed Lortab and was released.  (*Id.*)

Plaintiff treated with Dr. Christopher Leber, M.D. of Rehabilitation Medicine Associates in Gainesville, Florida for his lower back pain between December 2004 and March 2006.  On Plaintiff's initial visit to Dr. Lieber on December 27, 2004, Plaintiff was unable to abduct his left humerus and had severe atrophy of his left biceps and triceps musculature, but he was able to pronate and supinate his left upper extremity. (R. 278.)  Plaintiff also had decreased range of motion in his lumbar spine, but no tenderness in his cervical, thoracic or lumbar musculature, and was able to ambulate independently with a stiff but steady gait.  (R. 277-78.)

A CT scan of Plaintiff's lumbar spine on March 25, 2005 reflected mild diffuse disk bulging and mild stenosis at L4-L5 and annular disk bulging with a small to moderate sized disk protrusion, moderate stenosis, and moderate to advanced bilateral neural foraminal narrowing at L5-S1.  (R. 260-63.)  On an April 14, 2005 visit to Dr. Leber, Plaintiff exhibited functional range of motion of the cervical and thoracic spine without any tenderness in the cervical, thoracic or lumbar musculature. (R. 272-73.)

On November 7, 2005 Plaintiff reported having recently returned from a trip to Maine, where he had traveled in order to help his brother recover from a motorcycle accident.  (R. 270.)  On examination Plaintiff had decreased range of motion in the cervical and lumbar spine and tenderness in the lumbar paraspinal muscles, but he was able to ambulate independently with a steady gait.  (*Id.*)  An epidural steroid injection was performed at L4-L5 on January 11, 2006, which lowered Plaintiff's pain from a 10 out of 10 prior to the procedure to a 3 out of 10 post-procedure.  (R. 268-69.)

On February 16, 2006, Plaintiff reported to Dr. Leber that his neck and lower back pain were worse .  (R. 266.)  On examination Plaintiff exhibited limited motion in his lumbar spine, tenderness in his cervical and lumbar paraspinal muscles and impaired range of motion in his left upper extremity. (R. 266-67.)  However, Plaintiff ambulated independently with a steady gait and maintained active motion in all four extremities.  (R. 266.)  On a March 17, 2006 visit to Dr. Leber Plaintiff exhibited active motion in his bilateral lower extremities and right upper extremity but was limited in his range of motion in his left upper extremity.  (R. 265, 280.)  He also was  able to ambulate independently without an assistive device.  (*Id.*)

On June 16, 2006, Plaintiff reported to the Emergency Room at Shands at

Starke Hospital in Starke, Florida for complaints of neck pain.  (R. 421-25.)  A scan performed of Plaintiff's cervical spine showed mild disc narrowing at C5-C6 and possible muscle spasms.[21]  (R. 426.)  Plaintiff was diagnosed with a cervical muscle strain and was discharged with a soft cervical collar.  (R. 422, 425.)

On March 8, 2008 Dr. Eftim Adhami, M.D. performed a consultative physical examination of Plaintiff.  (R. 335-36.)  On examination Plaintiff exhibited no lumbar paravertebral muscle spasms and his straight leg testing was normal while seated and mildly positive while supine.  (R. 335.)  In his back, Plaintiff's range of motion was mildly decreased in forward flexion only and he exhibited no pain upon palpation.  (R. 336.)  Plaintiff's left hand grip was slow and there was some muscle atrophy in the left deltoid and arm, but Plaintiff exhibited no abnormal movements like rigidity or tremors and he was able to pick up small objects and button clothes with his left hand, albeit somewhat slowly.  (R. 335-36.)   Plaintiff was also able to walk normally and his heel, toe and tandem walk were also all normal.  (R. 336.)  Dr. Adhami's diagnosis was "1. lower back pain due to multilevel degenerative disease, mainly related to fascia arthritis; multi-level mild-to-moderate changes; SLRs [standing leg raises] are negative at least seated, mildly positive supine but not convincing; 2. Left arm, history of injury and muscle transfer surgery; hand is generally functional even though it gives the impression of slow function; ... deltoid is atrophic due to nerve damage and surgery ..."  (R. 336.)

Plaintiff reported to the Shands at AGH Hospital ER on December 4, 2008 complaining of a rash that had spread all over his body.  (R. 356-62.)  Physical

---

[21] The medical record from this visit does not reflect whether this was an X-ray or CT scan.  (R. 426.)

8

examination reflected his neck and back were non-tender to palpation, his upper and lower extremities were non-tender with full range of motion, and his gait was steady. (R. 357.)

On March 26, 2010, consulting physician William V. Choisser, M.D., J.D., performed an examination of Plaintiff at the request of Plaintiff's then-counsel. (R. 438-46.) Dr. Choisser's impression was "1. Chronic back pain with a history of degenerative disc disease and arthritis with evidence of sciatica in the right buttocks. 2. Left brachial plexus injury with grossly muscle atrophy and loss of function." (R. 439.) As part of his evaluation of Plaintiff, Dr. Choisser completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical), in which he concluded Plaintiff can lift up to ten pounds occasionally (with a notation Plaintiff uses his right arm only), occasionally carry up to ten pounds, sit for one hour at a time for a total of two hours in an eight hour workday, and stand or walk for ten minutes at a time for a total of less than 60 minutes in an eight hour workday. (R. 441-42.)

In March 2008, two non-examining state agency consulting physicians opined Plaintiff was capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, and sitting, standing and walking for about 6 hours in an 8 hour workday. (R. 337-44, 348-55.) Another non-examining state agency consulting physician arrived at an identical conclusion in June 2009. (R 375-82.)

    **C.**    **Hearing Testimony**

Plaintiff testified at his administrative hearing. Plaintiff testified his last employment had been as an apartment complex maintenance worker but he had stopped working in 2003 due to his lower back pain. (R. 28-31.)

Plaintiff testified he has problems with his left hand as a result of a motor vehicle accident in 1979 in which he was a pedestrian and was hit by a car. (R. 34.) After the accident, the triceps in Plaintiff's left arm was transferred to the position where his biceps muscle had previously been, which left Plaintiff without a deltoid muscle or triceps muscle in his left arm. (R. 33.) His grip strength in his left hand is weak, but he testified he can hold onto a tool like a hammer or screwdriver with a very weak grip with that hand. (R. 47-49.)

Plaintiff also testified he has issues with his lower back. (R. 36.) Plaintiff's back issues cause him to experience shooting pains on his right side and, when he walks, his left foot drags. (R. 36.) He has trouble bending from his waist, stooping or squatting. (R. 47-48.) He testified he can only sit for 15 minutes at a time, stand or walk for 10 minutes at a time, and lie down for 15 minutes at a time. (R. 38-39.)

Plaintiff testified his activities of daily living consist of watching TV and taking a walk to the end of the street and back once a day. (R. 43-44.) He can dress and bathe himself, but has to do so slowly. (R. 51-53.)

A Vocational Expert ("VE") also testified at the administrative hearing. The VE testified Plaintiff's past relevant work consisted of the positions of (i) building maintenance repair, which was a medium work position, and (ii) plumber, which is a heavy work position. (R. 63.) The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education level and past work experience. (R. 63-64.) He then asked the VE to assume the hypothetical individual could only lift and carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk and sit for a total of six hours in an eight hour work day; cannot push or pull with his left hand; can

climb ladders, ropes and scaffolds occasionally; has limitations on reaching in all directions with his left arm; and should avoid concentrated exposure to vibrations or working near dangerous machinery. (*Id.*) The VE testified the hypothetical individual could not perform Plaintiff's past relevant work. (R. 64.) The VE further opined, however, the hypothetical individual could still perform several jobs existing in significant numbers in the national economy. (*Id.*) The VE identified those jobs as sandwich board carrier, outside deliverer, and parking lot attendant. (R. 64-65.) The VE further testified there are thousands of each of those positions available in both the state of Florida and the national economy. (*Id.*)

    D.    <u>**The ALJ's Findings**</u>

In his written decision, the ALJ concluded Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and left arm paralysis. (R. 13.) He determined Plaintiff did not have an impairment or combination of impairments that met or equaled the Listings. (R. 14.) The ALJ further concluded Plaintiff had the RFC to perform light work with only occasional climbing of ladders, ropes or scaffolds, limited reaching in all directions with his left arm, and avoid concentrated exposure to vibrations, dangerous machinery and unprotected heights. (*Id.*)

The ALJ concluded Plaintiff was unable to perform any of his past relevant work. (R. 16.) The ALJ further concluded, considering the Plaintiff's age, education, work experience and residual functional capacity, there were jobs which existed in significant numbers in the national economy Plaintiff could perform. (R. 17.) In support of this conclusion, he cited the VE's testimony at Plaintiff's hearing that a hypothetical

individual with Plaintiff's vocational profile could perform the positions of sandwich board carrier and parking lot attendant. (*Id.*) He thus concluded Plaintiff had not been under a disability from September 15, 2003, the alleged disability onset date, through the date of the ALJ's decision. (R. 18.)

## IV. DISCUSSION

Plaintiff contends the ALJ committed two errors in his written decision. First, Plaintiff contends that the ALJ erred at step 2 of the sequential evaluation because he found that Plaintiff had degenerative disk disease rather than finding that Plaintiff had a herniated disk at L5-S1. Secondly, Plaintiff contends that the ALJ then went on to err in evaluating Plaintiff's RFC by failing to consider Plaintiff's impairments in combination and by failing to properly assess Plaintiff's RFC. The Court will discuss each argument below.

### A.   The ALJ's Step Two Determination

Plaintiff contends the ALJ erred at Step Two by finding Plaintiff had degenerative disk disease in his lumbar spine instead of defining the impairment as a herniated disk at L5-S1 with stenosis and impingement of the right S1 nerve root.[22] According to Plaintiff, the objective medical evidence in the record supports much more serious back problems than degenerative disk disease of the lumbar spine. There are two fundamental problems with Plaintiff's argument. First, at step 2 of the sequential evaluation the ALJ is only required to find that the claimant suffers from a severe

---

[22] It is not entirely clear where Plaintiff derived this exact language, but Dr. Leber's progress notes do reflect a diagnosis of "Lumbar pain secondary to L5-S1 with stenosis and impingement on right S1 nerve root" and similar such formulations of that diagnosis. (R. 265, 266, 280.)

12

impairment in order to proceed to the next steps in the sequential evaluation. Secondly, at step 2 of the sequential evaluation the ALJ is merely required to identify the impairment and then to consider the functional limitations from the impairment in determining the claimant's RFC at step 4. That is exactly what the ALJ did in this case.

At Step Two of the sequential evaluation the ALJ is required to determine whether there is any severe impairment before proceeding with the next step in the sequential evaluation. Thus, a finding of any severe impairment is enough to satisfy the requirement of Step Two.[23]

In this case, at Step Two the ALJ identified Plaintiff's severe impairments as including degenerative disk disease of the lumbar spine and left arm paralysis. (R. 13.) Although the ALJ did not include the specific medical diagnosis of "L5-S1 disk herniation with nerve stenosis and impingement damage," the ALJ, nonetheless, went on to evaluate at step four of the sequential evaluation Plaintiff's functional limitations, including pain, resulting from Plaintiff's alleged impairments in his lumbar spine.

Even assuming *arguendo* that the ALJ should have been more precise in identifying the impairment the failure to do so did not make any difference because the ALJ fully analyzed Plaintiff's lumbar disk problems in evaluating the Plaintiff's RFC at step four.[24]

For example, the ALJ discussed and fully considered all of the medical evidence

---

[23] Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); *see also,* Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)(noting a failure to find a particular impairment was severe was not reversible error because the ALJ found other severe impairments.).

[24] Council v. Barnhart, 127 Fed. Appx. 473, No. 04-13128, slip op. at 4 (11th Cir. Dec. 28, 2004)( "[T]he ALJ could not have committed any error at step two because he found that [Plaintiff] had a severe impairment . . . and moved on to the next step in the evaluation, which is all that is required at step two.")

13

relating to Plaintiff's lumbar spine beginning with Plaintiff's visit to the emergency room in July 2004. Notably, the ALJ then discussed the CT scan of Plaintiff's lumbar spine conducted by Dr. Vogler on March 25, 2005. This CT scan is the one that disclosed the bulging disc at L5-S1 with mild to moderate central stenosis with some nerve root impingement. The ALJ then went on to analyze Plaintiff's functional limitations related to the problems diagnosed in Plaintiff's lumbar spine.

Thus, contrary to Plaintiff's assertion, even though the ALJ did not identify at Step Two Plaintiff's impairment as an "L5-S1 disk herniation with nerve stenosis and impingement damage" the ALJ expressly discussed and evaluated the functional limitations resulting from Plaintiff's medical issues in his lower back. Accordingly, there was no error in failing to identify the impairment at step 2 as an "L5-S1 disk herniation with nerve stenosis and impingement damage."

### B. The ALJ Considered Plaintiff's Impairments in Combination

Plaintiff also argues that the ALJ erred by failing to consider Plaintiff's impairments in combination in assessing Plaintiff's RFC.

Where a claimant alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the impairments in making the determination as to whether the claimant is disabled.[25] Under the law in the Eleventh Circuit this burden is met where the ALJ expressly states he has considered all of the medical evidence and concludes Plaintiff is not suffering from "an impairment, or a combination of impairments listed in Appendix 1, Subpart P."[26] In the instant case the ALJ did just

---

[25] Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).

[26] Id.

14

that. The ALJ expressly concluded that: "The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 14.) Moreover, in determining whether the Plaintiff met a listing at step three of the sequential evaluation the ALJ expressly stated that "Despite the claimant's combined impairments ... " Plaintiff's medical evidence does not meet any listing level impairment.

Moreover, in discussing the medical evidence in his written decision as part of the evaluation of Plaintiff's RFC the ALJ expressly advised that he had given "careful consideration of the entire record" including consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (R. 14.) This language evidences that the ALJ properly considered Plaintiff's impairments in combination as part of the sequential evaluation.

In addition to the fact that the ALJ expressly stated he had considered Plaintiff's impairments in combination, a review of the ALJ's written decision discloses that the ALJ systematically addressed all of Plaintiff's impairments and their corresponding functional limitations on Plaintiff.   As discussed above, the ALJ considered Plaintiff's numerous emergency room visits for lower back pain and the medical findings from those visits; Plaintiff's visits to Dr. Leber from December 2004 to March 2006 and the progress notes from those visits; and the results of the examinations conducted by consulting physicians Dr. Adhami and Dr. Choisser.  (R. 15-16.)  The ALJ also considered the opinions of each of the three non-examining state agency physicians who completed Physical RFC evaluations of Plaintiff.  (R. 16.)

15

Contrary to Plaintiff's argument, the substantial medical evidence supports the ALJ's evaluation of Plaintiff's RFC.  For example, the ALJ properly noted that when Plaintiff was examined by Dr. Adhami, Plaintiff's straight leg raises tests were normal, while range of motion in his back was mildly decreased in forward flexion only and Plaintiff exhibited no pain in his back upon palpation.  (R. 335-36.)

The ALJ's RFC determination was also fully consistent with the opinions expressed by all three non-examining state agency consulting physicians.  (R. 337-44, 348-55, 375-82.)  Additionally, in determining Plaintiff's functional limitations related to his lumbar back problems the ALJ considered and relied upon Dr. Leber's treatment notes, which reflected Plaintiff's gait had improved from stiff and steady on his first visit to "[a]mbulation is independent with no assistive device required" on his last visit.(R. 277, 280.)

Plaintiff points to the opinion of consulting physician Dr. Choisser as support for his argument that the ALJ's RFC evaluation failed to consider Plaintiff's lumbar back issues.  Dr. Choisser completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical), in which he concluded Plaintiff can lift up to ten pounds occasionally (with a notation Plaintiff uses his right arm only), occasionally carry up to ten pounds, sit for one hour at a time for a total of two hours in an eight hour workday, and stand or walk for ten minutes at a time for a total of less than 60 minutes in an eight hour workday. (R. 441-42.)  Dr. Choisser, however, was only a one-time consulting physician and not a treating physician and therefore his opinions are not entitled to controlling weight.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004).  Accordingly, the ALJ was free to give limited weight to the opinions expressed

by Dr. Choisser. The ALJ determined that the opinion of Dr. Choisser should be given limited weight because Dr. Choisser's opinion on the checklist indicating significant limitations was directly at odds with the examinations and treatment notes by Dr. Leber and Dr. Adhami, both of whom concluded Plaintiff was able to walk normally and had full strength.

The Court, therefore, concludes that the ALJ properly considered and discussed in his written decision all of Plaintiff's impairments in combination in determining Plaintiff's RFC and in assessing Plaintiff's functional limitations resulting from the bulging disk at L5-S1.  Accordingly, Plaintiff has failed to demonstrate any error by the ALJ as result of the ALJ's characterization at step two of Plaintiff's lumbar issues as degenerative disk disease rather than as a herniated disk at L5-S1 with stenosis and impingement of the right S1 nerve root.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on January 13, 2012 .

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**